UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

JERRY RAMRATTAN,

                        Plaintiff,

           v.

BRIAN FISCHER, *et al.*,

                 Defendants.

-----------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: June 9, 2015 |

13 Civ. 6890 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Jerry Ramrattan, a New York State prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213 (the "ADA"). Plaintiff alleges that the failure of the New York State Department of Corrections and Community Supervision ("DOCCS") to hire a Hindu chaplain and provide meals compliant with his religious beliefs violates his rights under the Free Exercise Clause of the First Amendment and RLUIPA. Plaintiff also brings an ADA claim in connection with his claimed need for hearing aids. Defendants have moved to dismiss the Complaint for failure to state a claim. For the reasons discussed herein, that motion is granted.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff practices the Hindu religion. (Compl. 5). Upon arriving in DOCCS custody, Plaintiff identified himself as a member of the Hindu faith, and attempted to seek out a Hindu chaplain who could assist him in the practice of his religion. (*Id.*). Plaintiff was informed that DOCCS did not employ a Hindu chaplain. (*Id.*). Plaintiff then began filing grievances and writing letters to various officials within and outside of DOCCS, complaining about the lack of a Hindu chaplain and advocating for the hiring of one. (*Id.*). In response to his numerous inquiries, Plaintiff was informed that it was not fiscally possible for DOCCS to employ a chaplain for every religious group, especially where the population of inmates practicing a particular religion was very small. (*See, e.g.*, Dkt. #2-2 at 18). In the case of Hinduism, he was told, far less than one percent of the prison population had identified as Hindu (*viz.*, fewer than 50 inmates out of a population of over 55,000). (*See id.*). Plaintiff was repeatedly advised to follow the procedure set forth in DOCCS Directive #4202 on Religious Programs and Practices and was encouraged to work with

---

[1]    The facts alleged herein are drawn from Plaintiff's Complaint ("Compl." (Dkt. #2)), and are assumed true for the purposes of this Opinion. Citations to the Complaint are made using the page-numbering convention imposed by this Court's electronic case filing ("ECF") system. Plaintiff attached a large volume of documents to his Complaint, and it was therefore docketed as 12 separate PDFs. To the extent this Opinion cites documents contained within the first PDF (Dkt. #2), those will be referenced as "Compl. [page number]." To the extent this Opinion cites documents contained in the other 11 PDFs, docket entries 2-1 to 2-11, those will be referenced as "Dkt. #2-1 at [page number]," and so on. Defendants' memorandum of law in support of their motion to dismiss (Dkt. #71) will be referred to as "Def. Br." As discussed further below, Plaintiff's opposition to Defendants' pre-motion letter (Dkt. #46) will be referred to as "Pl. Opp."; Plaintiff did not submit any formal opposition to Defendants' motion.

the coordinating chaplain at his facility to locate a religious volunteer to assist him in the practice of his religion. (*See id.*; *see also* Dkt. #2-2 at 31, 32, 35, 36, 38; Dkt. #2-3 at 3, 4; Dkt. #2-6 at 31).

Plaintiff did write the coordinating chaplain at Auburn Correctional Facility, who informed Plaintiff that he would help provide materials and support. (Compl. 37). He further explained that although DOCCS could not accommodate a "group meet" or other group-oriented religious services for "just one person," Plaintiff "MOST CERTAINLY" [*sic*] would be "allowed to worship in the privacy of [his] cell as needed." (*Id.*). The coordinating chaplain at Great Meadow Correctional Facility[2] later provided Plaintiff with a similar response. (*See* Dkt. #2-6 at 31). Despite these communications, Plaintiff alleges that DOCCS's failure to hire a Hindu chaplain has interfered with his ability to practice his religion and constitutes unlawful religious discrimination. (Compl. 5-6). Plaintiff further complains that he has been forced to eat foods that do not comport with his religious dietary restrictions, and that he has been unable to observe unspecified "religious holy days and rites." (*Id.* at 5).

In addition to his claims based on religion, Plaintiff also alleges that, in response to his numerous grievances, he has been subjected to retaliation by Defendants. (Compl. 8-9). Finally, in a single sentence near the end of his narrative, Plaintiff alleges that Defendants have violated his rights under the ADA. (*Id.* at 9).

---

[2]     Plaintiff has moved between facilities several times. Discerning the exact timeline of Plaintiff's facility moves is not necessary to the resolution of the instant motion.

### B.     Procedural Background

On September 27, 2013, Plaintiff initiated this lawsuit against Defendants, seeking $25 million in damages, including "punitive rewards for deliberate indifference, pain (spiritual and emotional), religious suffering, religious discrimination, physical suffering, discriminatory hiring practices, violations of my constitutional rights … and direct harm from foods ingested." (Compl. 11).  Plaintiff also sought injunctive relief in that DOCCS be required to hire a Hindu chaplain and that DOCCS "provide for [his] religious needs in all aspect[s]."  (*Id.*).

On October 31, 2013, this Court issued an order of service.  In addition to directing Plaintiff to complete the paperwork that would permit the United States Marshals Service to effect service on his behalf, the Order also dismissed DOCCS from the case as an entity that could not be sued under Section 1983 due to Eleventh Amendment immunity.  (Dkt. #6).[3]  Between November 2013 and March 2014, Plaintiff sent the Court numerous letters setting out Plaintiff's allegations concerning retaliation against him for filing the instant lawsuit, and seeking a protective order.  (*See* Dkt. #7, 9-12, 14, 18-21).  The Court denied Plaintiff's requests contained within those letters and provided guidance as to how to proceed with new complaints.  (Dkt. #20).  Nonetheless,

---

[3]     Given that Plaintiff styled his Complaint as based entirely on Section 1983, and only referenced the ADA in a single line, the Court did not at that time construe Plaintiff to have brought valid claims under any statutes under which Congress had abrogated the states' immunity.  *See Trotman* v. *Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977) (finding that Congress has not abrogated the states' Eleventh Amendment immunity under Section 1983); *cf. United States* v. *Georgia*, 546 U.S. 151, 159 (2006) (establishing three-part process for determining whether Congress had validly abrogated a state's immunity from suit for certain ADA claims).

Plaintiff continued to submit numerous letters to the Court concerning matters outside the scope of his claims in this lawsuit.  (*See*, *e.g.*, Dkt. #22-24, 34, 41).

On June 27, 2014, Defendants submitted a pre-motion letter describing their proposed motion to dismiss and requesting a conference.  (Dkt. #43).  On July 24, 2014, Plaintiff submitted a response to Defendants' pre-motion letter that addressed the substance of Defendants' proposed motion.  (Dkt. #46).  The Court held a telephonic pre-motion conference with all parties on July 29, 2014.  (*See* Dkt. #52 ("July 29, 2014 Tr.")).  Among other things, at that conference, the Court ensured that Plaintiff understood that he would have another opportunity to respond more fully to Defendants' motion once they filed it.  (*Id.* at 4-5).  As it happened, Plaintiff did not submit an opposition to Defendants' motion to dismiss; accordingly, given Plaintiff's *pro se* status, the Court accepts Plaintiff's opposition to Defendants' pre-motion letter as his opposition to their motion.

In their motion papers, Defendants argue that the Complaint should be dismissed because: (i) Plaintiff cannot maintain an ADA claim against individuals; (ii) damages against Defendants in their official capacities are barred by the Eleventh Amendment; (iii) money damages are not available to Plaintiff under RLUIPA; (iv) Plaintiff fails adequately to allege the individual Defendants' personal involvement in any alleged constitutional violation; (v) Plaintiff fails to state a cognizable constitutional violation to sustain a Section 1983 claim; and (vi) Plaintiff fails to state a cognizable claim for retaliation.  (Def. Br. 1-2, 4-12).  In his opposition, Plaintiff argues that he has

stated claims, and provides incremental factual information, as discussed further below.  (*See generally* Pl. Opp.).

## DISCUSSION

### A.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering such a motion, a court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).

A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation and internal quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

6

incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).  "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted).  Further, even where Defendants have not sought dismissal of a particular claim, the Court has the authority to screen *sua sponte* an *in forma pauperis* complaint at any time and must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Livingston* v. *Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

7

**B.      Plaintiff's ADA Claims Are Dismissed**

**1.      Applicable Law**

The purpose of the ADA is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Andino* v. *Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (internal quotation marks omitted).  Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

To state a claim under the statute, then, a plaintiff must plead "[i] that he is a 'qualified individual' with a disability; [ii] that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and [iii] that such exclusion or discrimination was due to his disability." *Varney* v. *Many*, No. 13 Civ. 5285 (VB), 2015 WL 1730071, at *3 (S.D.N.Y. Apr. 14, 2015) (citing *Hargrave* v. *Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).  Critically, plaintiff must allege his mistreatment "was motivated by either discriminatory animus or ill will due to disability." *Id.* (internal quotation marks omitted).  "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Id.* (citing *Elbert* v. *N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases)).

8

### 2.   Analysis

Plaintiff contends that "all the defendants and employees and staff violated the ADA [ ] [be]cause I have hearing aids." (Compl. 9). Defendants argue that Plaintiff's claims must be dismissed because an ADA claim cannot be brought against individuals; Defendants do not otherwise address the merits of Plaintiff's claim. (Def. Br. 4).

### a.   Plaintiff's ADA Claims Against Individual Defendants Are Dismissed with Prejudice

Defendants are correct that "individuals cannot be named as defendants in ADA suits in either their official or representative capacities." *Tavares* v. *N.Y.C. Health & Hosps. Corp.*, No. 13 Civ. 3148 (PKC) (MHD), 2015 WL 158863, at *7 n.8 (S.D.N.Y. Jan. 13, 2015) (citing *Carrasquillo* v. *City of New York*, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) (dismissing ADA claims against individuals)); *see also Garcia* v. *S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials"). Plaintiff's ADA claims are therefore dismissed with prejudice against the individual Defendants.

### b.   Plaintiff's ADA Claims Against the State Are Dismissed Without Prejudice

Construed liberally, Plaintiff's complaint can be read to assert an ADA claim against New York State (or DOCCS, the State's agency). Such a claim is actionable under *Tennessee* v. *Lane*, 541 U.S. 509 (2004), which upheld the ADA's abrogation of a State's Eleventh Amendment immunity, and found that

9

liability extends to include state and local governments, as well as their agencies and instrumentalities.  Even if the State or DOCCS were currently party to this action, however, Plaintiff's claim must nevertheless be dismissed.

Plaintiff's claim fails because it is a bare, conclusory allegation that does not provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569.  First, Plaintiff does not adequately allege any disability, nor does he allege that Plaintiff was prevented from participating in or benefiting from prison programs and services because of his disability: his mere recitation of "because I have hearing aids" is not enough.  He does not allege that he has hearing loss or any other disability.  When an ADA claim fails to allege that plaintiff was a "qualified individual with a disability," it must be dismissed.  *See, e.g., Veloz* v. *New York*, 178 F. App'x 39, 41 (2d Cir. 2006) (summary order) (affirming dismissal of ADA claim where inmate did not demonstrate he was a "qualified individual with a disability").

Likewise, when an ADA claim does not state that a plaintiff was *excluded* from a prison service or program, it must be dismissed.  *See Carrasquillo*, 324 F. Supp. 2d at 443 (dismissing ADA claim where inmate alleged only that he had difficulty walking to law library and infirmary, not that he was prevented altogether from accessing them, and admitted access on several occasions); *Devivo* v. *Butler*, No. 97 Civ. 7919 (HB), 1998 WL 788787, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind).  Finally, Plaintiff does not allege any discriminatory animus, or that he was excluded from any public

10

service because of ill will against his disability.  *See Varney*, 2015 WL 1730071,
at *3.  Accordingly, Plaintiff's ADA claims are dismissed in their entirety.

Plaintiff has not sought leave to amend his Complaint.  However, the
principle that the "court should freely give leave [to amend a pleading] when
justice so requires," Fed R. Civ. P. 15(a)(2), is particularly applicable to *pro se*
plaintiffs, *see Davis* v. *Goord*, 320 F.3d 346, 352 (2d Cir. 2003).  "A *pro se*
complaint should not be dismissed without the court granting leave to amend
at least once when a liberal reading of the complaint gives any indication that a
valid claim might be stated." *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir.
2010) (internal quotation marks omitted).  "Where it appears that granting
leave to amend is unlikely to be productive, however, it is not an abuse of
discretion to deny leave to amend."  *Lucente* v. *Int'l Bus. Mach. Corp.*, 310 F.3d
243, 258 (2d Cir. 2002) (internal quotation marks omitted).

Plaintiff's opposition to Defendants' pre-motion letter provides
information, albeit sparse, suggesting that an amendment of his ADA claim
may not be futile.  Specifically, Plaintiff asserts that he has been classified by
an audiologist as "HL 30," and argues that he is entitled to certain
accommodations under DOCCS Directive #2612, which addresses
accommodations for inmates with hearing impairments.  (Pl. Opp. 3). [4]  He also

---

[4]     The Court takes notice that the classification of "HL 30" means the inmate has "non-
significant hearing loss" under the Directive, but may nonetheless be entitled to some
accommodations.  *See, e.g.*, *Rosales* v. *LaValley*, No. 11 Civ. 106 (MAD) (CFH), 2012 WL
7688115, at *1 (N.D.N.Y. Nov. 2, 2012) (discussing and quoting text of Directive #2612),
*report and recommendation adopted in part, rejected in part*, 2013 WL 992547 (N.D.N.Y.
Mar. 13, 2013).

contends that he has been "denied access" to certain services, including the "Resource Room and the tele-fax machine," although he does not make clear that the denial of access is *because of* ill will towards his disability, or whether he was entirely excluded from those services. (*Id.*). He also claims that he "can't use the regular telephone" since he has not been provided with hearing aids. (*Id.*).[5] But even if Plaintiff's alleged hearing disability does prevent him from using certain services, this is not enough: not receiving proper treatment for a disability is not enough to sustain an ADA claim. Rather, Plaintiff must allege that he was mistreated *because of* his disability. *See Elbert*, 751 F. Supp. 2d at 596 (dismissing ADA claims where "Plaintiff [was] claiming that Decedent was not properly treated *for* his [disability], not that he was mistreated *because of* his [disability]" (emphases in original)); *see also Varney*, 2015 WL 1730071, at *3.

The Court therefore will permit Plaintiff to amend his ADA claims, if he believes he can allege facts that support the elements of such a claim as set forth herein. If Plaintiff chooses to amend his ADA claims, he may also amend to add the public entity DOCCS, despite its prior dismissal from this action. If Plaintiff fails to re-plead these claims adequately, they may be dismissed with prejudice.

---

[5]    In this regard, the Court cautions Plaintiff that false or frivolous claims will be dismissed. In particular, Plaintiff's allegations that he cannot use a telephone strain credulity where he has participated in a telephone conference with the Court unaided, and heard and responded to everything the Court said. (*See generally* July 29, 2015 Tr.).

**C.     Plaintiff's Claims of Religious Deprivation Are Dismissed**

Plaintiff brings his religious-liberty claims pursuant to two separate statutes: 42 U.S.C. § 1983 and Section 3 of RLUIPA, 42 U.S.C. § 2000cc-1.

**1.     Applicable Law**

**a.     Claims Under Section 1983**

Plaintiff first relies on Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992). As such, a "[Section] 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

In attempting to ascertain the putative violation of rights underlying Plaintiff's Section 1983 claim, Defendants have construed the Complaint to allege violations of the Free Exercise Clause of the First Amendment, which guarantees the right to the free exercise of religion. Convicted felons do not relinquish this right upon incarceration. *See O'Lone* v. *Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise

of religion." (internal citations omitted)); *Ford* v. *McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." (internal citation omitted)).  It is well-accepted, however, that a prisoner's right to exercise his religion involves considerations that do not apply to persons outside of the penal system.  Namely, "the prisoner's right is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security."  *Woodward* v. *Perez*, No. 12 Civ. 8671 (ER), 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) (internal quotation marks omitted); *see also Salahuddin* v. *Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) ("A prisoner's right to practice his religion is ... not absolute."). Accordingly, free exercise claims of prisoners are judged "under a reasonableness test less restrictive than that ordinarily applied: a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin* v. *Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone*, 482 U.S. at 349); *see Vann* v. *Fischer*, No. 11 Civ. 1958 (KPF), 2014 WL 4188077, at *8-14 (S.D.N.Y. Aug. 25, 2014) (finding burdens imposed on inmates wearing religious beads were reasonably related to legitimate penological interest of inmate safety), *reconsideration denied*, No. 11 Civ. 1958 (KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015).

Under this reasonableness test, a prisoner asserting a free exercise claim "must show at the threshold that the disputed conduct substantially burdens

his sincerely held religious beliefs." *Salahuddin* v. *Goord*, 467 F.3d at 274-75.[6]
"The defendants then bear the relatively limited burden of identifying the
legitimate penological interests that justify the impinging conduct; the burden
remains with the prisoner to show that these articulated concerns were
irrational." *Id.* at 275 (alterations and internal quotation marks omitted).

   "A substantial burden on religious exercise exists when an individual is
required to choose between following the precepts of his religion and forfeiting
benefits, on the one hand, and abandoning one of the precepts of his religion
on the other hand." *Vann*, 2014 WL 4188077, at *9 (alterations and internal
quotation marks omitted) (citing *Westchester Day Sch.* v. *Village of
Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007)).  Plaintiff need not show that
the disputed conduct impedes a religious practice mandated by his religion,
but he must show that it burdens a religious practice that is "central or
important" to his practice of religion. *Ford*, 352 F.3d at 593-94. "Significantly,
the plaintiff's burden in demonstrating substantial burden is not a particularly
onerous task." *Woodward*, 2014 WL 4276416, at *4 (internal quotation marks
omitted); *see also McEachin* v. *McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004).

---

6    "It has not been decided in this Circuit whether, to state a claim under the First
     Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the
     disputed conduct substantially burdens his sincerely held religious beliefs.'" *Holland* v.
     *Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quoting *Salahuddin* v. *Goord*, 467 F.3d at 274-
     75).  However, because here the Court finds that Plaintiff has not pleaded sufficient
     facts to allege the personal involvement of any Defendants or to establish any burden
     on his religious beliefs, the Court need not grapple with the weight of the burden at this
     time.

Although Defendants do not address it, this Court also construes Plaintiff to have alleged violations of the First Amendment's Establishment Clause.  Indeed, in his opposition to Defendants' pre-motion letter, Plaintiff specifically refers to the Establishment Clause.  (Pl. Opp. 4).  The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  In deciding an Establishment Clause claim, courts in this Circuit continue to apply the three-prong test articulated by the Supreme Court in *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971).  *See Bronx Household of Faith* v. *Bd. of Educ. of N.Y.C.*, 650 F.3d 30, 40 n.9 (2d Cir. 2011) ("Although the *Lemon* test has been much criticized, the Supreme Court has declined to disavow it and it continues to govern the analysis of Establishment Clause claims in this Circuit.").  Under *Lemon*, "government action which interacts with religion [i] must have a secular purpose, [ii] must have a principal or primary effect that neither advances nor inhibits religion, and [iii] must not foster an excessive government entanglement with religion."  *Bronx Household of Faith*, 650 F.3d at 40 (alterations and internal quotation marks omitted) (citing *Lemon*, 403 U.S. at 612-13).  "[A]t the heart of the Establishment Clause [is] that government should not prefer one religion to another, or religion to irreligion."  *Pugh* v. *Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (quoting *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist.* v. *Grumet*, 512 U.S. 687, 703 (1994)).

Given that plaintiff is a prisoner challenging a DOCCS action or regulation, "the *Lemon* test is tempered by the test laid out by the Supreme

16

Court in [*Turner* v. *Safley*, 482 U.S. 78 (1987)], which found that a prison regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is reasonably related to legitimate penological interests." *Pugh*, 571 F. Supp. 2d at 494 (internal quotation marks omitted).  Additionally, "in the prison context, the [E]stablishment [C]lause has been interpreted in the light of the affirmative demands of the [F]ree [E]xercise [C]lause." *Muhammad* v. *N.Y.C. Dep't of Corr.*, 904 F. Supp. 161, 198 (S.D.N.Y. 1995) (internal quotation marks omitted); *see also id.* ("In order to permit inmates to freely exercise their religion, *some* entanglement is necessary." (emphasis in original)).  As discussed further below, regardless of the underlying constitutional violation Plaintiff alleges — whether under the Free Exercise Clause, the Establishment Clause, or something else entirely — he must allege the personal involvement of Defendants to state a claim under Section 1983.  *See Farrell* v. *Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

### b. Claims Under RLUIPA

"RLUIPA offers similar protections to prisoners as the Free Exercise Clause but heightens the standard for both plaintiffs and defendants." *Woodward*, 2014 WL 4276416, at *6 (citation and internal quotation marks omitted).  "RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious exercise'[ ] of inmates in certain institutions unless the government shows that the burden furthers a compelling interest by the least restrictive means." *Salahuddin* v. *Goord*, 467 F.3d at 273 (footnote omitted) (quoting 42 U.S.C. § 2000cc-1(a)).  "Only if a

17

plaintiff shows that his religious exercise has been substantially burdened, do the defendants need to show something more than a rational relationship between the policy at issue and a governmental interest." *Woodward*, 2014 WL 4276416, at *6.  If the plaintiff demonstrates that the "state has imposed a substantial burden on the exercise of his religion[,] … the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest."  *Redd* v. *Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (citing 42 U.S.C. § 2000cc-1(a)).

### 2.    Analysis

#### a.    Official Capacity Damages Claims Brought Under Section 1983 Are Dismissed

The Eleventh Amendment, as a general matter, makes states immune from suit.  *Seminole Tribe of Florida* v. *Florida*, 517 U.S. 44, 54 (1996).  Eleventh Amendment immunity applies also to state officials sued in their official capacities.  *Pennhurst State School & Hosp.* v. *Halderman*, 465 U.S. 89, 101-02 (1984).  "Employees of DOC[C]S and its facilities, when sued in their official capacities, have been held to be subject to the State's Eleventh Amendment immunity."  *Lyerly* v. *Phillips*, No. 04 Civ. 3904 (PKC), 2005 WL 1802972, at *3 (S.D.N.Y. July 29, 2005) (collecting cases).  "The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his individual or personal capacity."  *Farid* v. *Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (internal quotation marks omitted).  Thus, to the extent Plaintiff sues

Defendants in their official capacities under Section 1983, his claims are dismissed.  He may still, however, seek money damages against Defendants in their personal capacities.

### b.    Official and Individual Capacity Damages Claims Brought Under RLUIPA Are Dismissed

RLUIPA does not afford a plaintiff a cause of action for money damages against individual defendants in either their official capacities, *Sossamon* v. *Texas*, 131 S. Ct. 1651, 1663 (2011), or their individual capacities, *Washington* v. *Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013).  Accordingly, to the extent Plaintiff seeks monetary damages under RLUIPA, those claims are dismissed.

Plaintiffs may, however, seek injunctive relief against officials in their official capacities.  *See Sossamon*, 131 S. Ct. at 1658 (holding that "a waiver of sovereign immunity to other types of relief does not waive immunity to damages"); *id.* at 1666 (Sotomayor, J., dissenting) (observing that "the majority appears to accept that equitable relief is available to RLUIPA plaintiffs"); *see also Goode* v. *Bruno*, No. 10 Civ. 1734 (SRU), 2013 WL 5448442, at *7 (D. Conn. Sept. 30, 2013) (permitting a RLUIPA claim for injunctive relief to continue past summary judgment).[7]  All that remains for this Court's

---

[7]    Although Defendants do not make this argument, it is also possible that Plaintiff's RLUIPA claims for injunctive relief should be dismissed as moot.  In this Circuit, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *Salahuddin* v. *Goord*, 467 F.3d at 272; *see also Prins* v. *Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").  Plaintiff is currently incarcerated at Attica Correctional Facility, and all Defendants are employed elsewhere, potentially rendering his claims moot.  Certain decisions in this District have allowed claims for injunctive relief against prison officials to proceed despite an inmate's transfer from the facility in question, under the theory that such claims may be "capable of repetition, yet evading review."  *Pugh*, 571 F. Supp. 2d at 489.  However, the Court's determination that

consideration, then, are his claims for injunctive relief under RLUIPA and his claims for personal capacity monetary damages under Section 1983.

### c.   Plaintiff Has Failed to Plausibly Allege the Personal Involvement of Defendants

Plaintiff brings claims against 12 individual Defendants, including the Governor of the State of New York, the Commissioner of the New York State Police, the former Commissioner of DOCCS, six facility superintendents, and a DOCCS Director.  As a prerequisite to relief under both Section 1983 and RLUIPA, a plaintiff must show the personal involvement of defendants in the alleged constitutional deprivations.  *See Farrell*, 449 F.3d at 484 (Section 1983); *Covington* v. *Mountries*, No. 13 Civ. 343 (VEC), 2014 WL 2095159, at *5 (S.D.N.Y. May 20, 2014) (RLUIPA).  To show personal involvement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

A court may consider supervisory personnel "personally involved" if a plaintiff plausibly alleges facts showing that those defendants: (i) participated directly in the alleged constitutional violation; (ii) failed to remedy the wrong after being informed of it; (iii) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a

---

Plaintiff has not adequately pleaded a claim means that it will not consider the mootness issue at this time.

20

policy or custom; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts. *Grullon* v. *City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citing *Colon* v. *Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[8]

"The bare fact that [an official] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon*, 58 F.3d at 874; *see also Ayers* v. *Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (explaining that sustaining a Section 1983 claim "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply"). "Even where there has been a constitutional violation, receipt of letters or grievances is insufficient to impute personal involvement." *Dilworth* v. *Goldberg*, No. 10 Civ. 2224 (RJH) (GWG), 2011 WL 3501869, at *19 (S.D.N.Y. July 28, 2011) (citation, alteration, and quotation marks omitted), *report and recommendation adopted*, 2011 WL 4526555 (S.D.N.Y. Sept 30, 2011). Further, "[t]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Vann*, 2014 WL 4188077, at *7 (citation omitted). "Nor is a supervisor liable under [Section] 1983 when she receives a letter and forwards it to the appropriate staff

---

[8]       Courts have disagreed as to whether the five *Colon* factors continue to apply after *Iqbal*. *See generally McNaughton* v. *de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *5 n.8 (S.D.N.Y. Feb. 4, 2015) (collecting cases). Any such uncertainty, however, does not alter settled law that "[t]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under [Section] 1983." *Styles* v. *Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (summary order) (collecting cases).

personnel to handle, but takes no other action." *Id*; *see also Sealey* v. *Giltner*, 116 F.3d 47, 51 (2d Cir. 2007) (affirming dismissal for failure to allege personal involvement where defendant referred one letter and responded to the next by informing plaintiff that a decision had been rendered). Additionally, after *Iqbal*, under both Section 1983 and RLUIPA, "an official's denial of a grievance alleging a constitutional deprivation, without more, does not amount to personal involvement in the deprivation of that right." *Joseph* v. *Fischer*, No. 08 Civ. 2824 (PKC) (AJP), 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009). "Only where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint) can the supervisor be held personally involved for [Section] 1983 purposes." *Vann*, 2014 WL 4188077, at *7 (internal quotation marks omitted). As Defendants argue, Plaintiff has not met the burden of pleading personal involvement for any of the 12 individual Defendants.

### i. Dr. Adams, C.O. Hayes, and Sgt. Hutti

With regards to Dr. Adams, C.O. Hayes, and Sgt. Hutti, Plaintiff simply does not allege any involvement in, or even awareness of, his purported religious deprivations. Accordingly, to the extent that Plaintiff's complaint makes religious deprivation claims against Dr. Adams, C.O. Hayes, and Sgt. Hutti, those claims are dismissed.

### ii. Governor Cuomo, Former Commissioner Fischer, and Superintendent D'Amico

Plaintiff alleges that Governor Cuomo, Former Commissioner Fischer, and Superintendent D'Amico violated RLUIPA and the Free Exercise Clause by

failing to hire a Hindu chaplain and failing to provide him with a special Hindu diet.  (Compl. 5-6).  As Defendants point out (Def. Br. 6-7), Plaintiff does nothing more in his Complaint than name these individuals, reference their job titles, make conclusory allegations that they failed to provide him a Hindu chaplain and diet, and attach letters he sent them complaining about the lack of a Hindu chaplain.  (*See* Compl. 5-6, 22; Dkt. #2-2 at 22-24).  Receipt by these officials of letters of complaint, even if true, is simply not enough to establish personal involvement.  *See Dilworth*, 2011 WL 3501869, at *19.[9] Plaintiff's claims against these Defendants are apparently predicated entirely upon their positions of authority within New York State.  Accordingly, Plaintiff's religious deprivation claims against Governor Cuomo, Former Commissioner Fischer, and Superintendent D'Amico are dismissed.

### iii.   Superintendents Perez, Rock, Racette, Graham, LaValley, and Director Morris

Plaintiff also alleges that Superintendents Perez, Rock, Racette, Graham, LaValley, and Director Morris violated RLUIPA and the Free Exercise Clause by failing to hire a Hindu chaplain and failing to provide him with a special Hindu diet.  (Compl. 5-6).  As with the other Defendants, Plaintiff does not include any specific factual allegations against these Defendants; he simply provides their names and titles and alleges they failed to hire a Hindu chaplain or provide him with a special diet.  Claiming that these individuals are in the chain-of-

---

[9]     At least one letter attached to the Complaint indicates that former Commissioner Fischer referred Plaintiff's letter to the appropriate official for handling.  (*See, e.g.*, Dkt. #2-2 at 18).  Referring an inmate's complaint to the appropriate staff is not enough to establish personal involvement.  *See Vann*, 2014 WL 4188077, at *7.

command in the prison hierarchy is not enough to allege personal involvement.
*See Colon*, 58 F.3d at 874.  Plaintiff further attaches letters and grievance
determinations to the Complaint; these attachments purport to demonstrate
that these Defendants were copied on correspondence complaining about the
lack of Hindu chaplain or that they reviewed Plaintiff's grievances.
Significantly, however, alleging that these Defendants received and reviewed
letters and grievances, or even that they denied the relief sought in grievances,
is not enough to plead their personal involvement.  Accordingly, Plaintiff's
religious deprivation claims against Superintendents Perez, Rock, Racette,
Graham, LaValley, and Director Morris are dismissed.

### d.   Plaintiff Has Failed to State a Claim for Religious Deprivation

Plaintiff's Complaint is dismissed solely on the ground that he has failed
to allege any personal involvement by Defendants.  However, because Plaintiff
is *pro se*, because his claims are dismissed without prejudice (except where
specified), and because Plaintiff's claims as-pleaded are wholly inadequate, the
Court will address the substance of Plaintiff's religious deprivation claims as
well.  Plaintiff does not adequately allege any facts that demonstrate that his
ability to practice his religion has been unlawfully burdened by the failure of
DOCCS to hire a Hindu chaplain or provide him a special religious diet.

### i.   Plaintiff's Claims Regarding the Failure to Hire a Hindu Chaplain Are Deficient

Plaintiff's claims regarding religious discrimination are vague and
conclusory.  Plaintiff simply repeats in his Complaint that his "freedom of

religion" has been "violated," that he has been subject to "religious discrimination," that there have been "important Holy Days and Rituals that [he] could not properly observe" due to religious discrimination, that Defendants have "disregard[ed] [his] religious needs [and] religious rites," and that they have failed "to accommodate [him] religiously." (Compl. 5-6). Plaintiff's opposition to Defendants' pre-motion letter is no better, incanting repeatedly the legal conclusion that his practice of religion has been substantially burdened. (Pl. Opp. 1-2, 4).

The operative Complaint does not allege any facts that "nudge [Plaintiff's] claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d at 50. Plaintiff makes no showing regarding how contact with Hindu advisors is "central or important" to the practice of his faith, necessary to sustain a Free Exercise claim. *Rossi* v. *Fishcer*, No. 13 Civ. 3167 (PKC) (DF), 2015 WL 769551, at *10 (S.D.N.Y. Feb. 24, 2015) (dismissing free exercise claim based on lack of access to advisors). Nor does he explain how not having a Hindu advisor impermissibly burdens his practice of his religion. He claims his religious "needs" and "rites" have been disregarded, and that he has not been able to "properly" observe religious holidays. (Compl. 6). But Plaintiff does not identify any specific needs, rites, or holidays; nor does he allege the facts of any occasion when any Defendant has actually interfered with the practice of his religion. Plaintiff simply complains that it is "religious discrimination" that DOCCS "provide[s] chaplains for Muslims, Jews, Catholics, Christians, Protestant[s], [and] Nation of Islam," but not for his

25

religion, "which is an equally large religion." (Compl. 6). These conclusory allegations are not enough to state a claim under the First Amendment or RLUIPA.[10]

### ii. Plaintiff's Claims Regarding the Failure to Provide a Special Religious Diet Are Deficient

Plaintiff also fails to state a claim as it concerns his diet. It is true that it has long been established that "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Kahane* v. *Carlson*, 527 F.2d 492, 495 (2d Cir. 1975); *see also McEachin*, 357 F.3d at 203 ("[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."). But Plaintiff again only makes conclusory allegations: he claims that the food that DOCCS provides is "not in accordance with my religious beliefs and religious diet," and that they have failed to accommodate his "dietary needs in accordance with [his] religion." (Compl. 5-

---

[10]  Determining whether a challenged policy is reasonably related to a legitimate penological interest is a fact-laden inquiry that is generally ill-suited for resolution on a motion to dismiss. *See Ford*, 352 F.3d at 596 (declining to determine whether defendants' conduct was reasonably related to legitimate penological interests on motion to dismiss because "the record [was] insufficient to resolve this fact — and context — specific dispute"). On this motion to dismiss, the Court declines to assess whether there is a "valid, rational connection" between Defendants' actions and their purported concerns. *See Turner*, 482 U.S. at 89.

The Court notes, however, that Defendants advance strong arguments based on the record in this case, which is more voluminous than is typical on a motion to dismiss due to the number of documents Plaintiff attached to his Complaint. (Def. Br. 11). Specifically, as Defendants argue, letters Plaintiff attached to his complaint strongly support that because so few inmates are Hindu — comprising less than one percent of the DOCCS prison population — it was not fiscally justifiable to employ a Hindu chaplain on staff. (*See* Dkt. #2-2 at 18, #2-11 at 13). The Court may revisit Defendants' arguments if further motion practice ensues.

6).  Plaintiff's opposition to Defendants' pre-motion letter does not fill in any

detail; it simply claims, "For all food served in messhall, as well as[ ] sold in

commissary, doesn't comply nor fall within the criteria for practicing Hinduism.

Therefore, Plaintiff is forced to eat food that goes against his religious diet and

belief."  (Pl. Opp. 2).  Plaintiff does not allege what a Hindu diet is, or identify

how the meals he is provided are not compatible with that diet.

Moreover, during the July 29, 2014 conference, Plaintiff suggested that

his discontent with his prison diet stemmed not from the dictates of his

religion, but from the fact that in accommodating his religious diet the facility

often substituted animal proteins with soy protein, which is something Plaintiff

does not personally eat.  (July 29, 2014 Tr. 11-12).  The Court cautions

Plaintiff that DOCCS is under no obligation to accommodate his personal

dietary preferences; it only must accommodate diets dictated by his practice of

his religion.  *See Kahane*, 527 F.2d at 496 (holding that a prison was required

to provide an orthodox Jewish rabbi with a diet that maintained his good

health and did not violate Jewish dietary laws, but refusing to mandate any

specific food item or method for fulfilling this order, as "[s]uch details are best

left to the prison's management which can provide from the food supplies

available within budgetary limitations"); *see also Rossi*, 2015 WL 769551, at *9

(finding plaintiff did not plausibly allege Free Exercise Clause claim where he

did not allege that holy day meals were inconsistent with religious beliefs or

explain how adding certain items to the meals was "central or important" to his

religion).

27

**D.**     **Plaintiff's Retaliation Claims Are Dismissed**

Finally, Plaintiff alleges that Defendants retaliated against him for filing grievances by denying him needed medical care and otherwise subjecting him to "harassment, threats, [and] retaliation." (Compl. 9). To establish a First Amendment claim of retaliation, a plaintiff must show: "[i] that the speech or conduct at issue was protected, [ii] that the defendant took adverse action against the plaintiff, and [iii] that there was a causal connection between the protected speech and the adverse action." *Espinal* v. *Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted). In the prison context, "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel* v. *County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis* v. *Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation omitted); *see also Wrobel*, 692 F.3d at 31.

When considering a prisoner's retaliation claims, the court must bear in mind that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Davis*, 320 F.3d at 353 (citation omitted). Since it is "near[ly] inevitabl[e]" that "prisoners will take exception" with the decisions of prison officials, and given "the ease with which claims of retaliation may be fabricated," the Second Circuit has cautioned that prisoners' retaliation claims must be "examin[ed] ... with skepticism and particular care." *Colon*, 58 F.3d at 872; *see also Davis*,

28

320 F.3d at 352.  "To survive a motion to dismiss, such claims must be
supported by specific and detailed factual allegations, not stated in wholly
conclusory terms."  *Friedl* v. *City of New York*, 210 F.3d 79, 85-86 (2d Cir.
2000) (citation omitted).

Although Plaintiff has satisfied the first prong of a retaliation claim — the
First Amendment protects prisoners from retaliation for the filing of grievances
and lawsuits, *Davis*, 320 F.3d at 352-53 — his claims are stated in "wholly
conclusory terms," *Friedl*, 210 F.3d at 86, and must be dismissed.  With
regards to "all defendants," Plaintiff alleges they violated his rights "in many
ways as to harassment, threats, retaliation, false misbehavior reports, messing
with legal mail and reg[ular] mail, moving around from one floor to other then
moving me from facility to facility creating undue hardship as well as to my
family and love[d] ones too with all the games by these defendants."
(Compl. 9).  As Defendants argue (Def. Br. 13), this claim must be dismissed
because even under the most liberal reading of the Complaint, Plaintiff's
allegations are wholly conclusory and lacking in facts sufficient to connect each
Defendant to a retaliatory action.  *See Dove* v. *Fordham Univ.*, 56 F. Supp. 2d
330, 335 (S.D.N.Y. 1999) (dismissing complaint where plaintiff named
defendants in caption but body of complaint contained no allegations
explaining how defendants violated the law or injured plaintiff), *aff'd sub nom.*
*Dove* v. *O'Hare*, 210 F.3d 354 (2d Cir. 2000); *see also Kasiem* v. *Rivera*, No. 09
Civ. 9665 (DLC), 2011 WL 166929, at *6 (S.D.N.Y. Jan. 18, 2011) (dismissing

as too conclusory allegations that defendants made false reports and made death threats "solely on the basis of retaliatory reprisal").

In alleging his retaliation claims, Plaintiff does specifically name Defendants Dr. Adams, C.O. Hayes, Sgt. Hutti, and Superintendent LaValley. (Compl. 8).  Even so, Plaintiff's allegations against these Defendants are far too conclusory to state a claim.  He alleges they retaliated by issuing him two "false tickets" and engaging in the "biggest set up" to have him transferred from the Clinton Correctional Facility.  (*Id.*).  Plaintiff does not specify who issued these "false tickets" or which grievances these allegedly retaliatory actions were in response to; he does not state what acts each of these Defendants took in retaliation; and he does not establish any time frame that might permit an inference of a causal connection.  *See Dawes* v. *Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (finding that failure to set forth a time frame for the alleged events precludes inference of a causal relationship for purposes of retaliation claim), *overruled on other grounds*, *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 508 (2002).  Plaintiff has not pleaded enough facts to state a claim for retaliation. His retaliation claims are therefore dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Complaint is dismissed in its entirety.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

Should Plaintiff wish to attempt to re-plead those claims that were dismissed without prejudice, he may submit an amended complaint in

accordance with this Opinion on or before **August 10, 2015**, and this case will be reopened.  Plaintiff is cautioned that if submits an amended complaint that does not address — and rectify — the deficiencies discussed in this Opinion, some or all of his claims may be dismissed with prejudice.

   SO ORDERED.

Dated:  June 9, 2015
    New York, New York

               _____
                KATHERINE POLK FAILLA
              United States District Judge

---

*A copy of this Order was mailed by Chambers to:*

```
Jerry Ramrattan
12A0608
Attica Correctional Facility
(B-19-06)
Attica, NY 14011
```

---